**No. 24-40447**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————

THE GENERAL LAND OFFICE OF THE STATE OF TEXAS; DAWN
BUCKINGHAM, Commissioner, Medical Doctor,

*Plaintiffs-Appellees*,

v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United
States of America; UNITED STATES DEPARTMENT OF HOMELAND
SECURITY; ALEJANDRO MAYORKAS, in his official capacity as
Secretary of the United States Department of Homeland Security; UNITED
STATES OF AMERICA; TROY A. MILLER, in his official capacity as
Acting Commissioner of the United States Customs and Border Protection;
UNITED STATES CUSTOMS AND BORDER PROTECTION,

*Defendants-Appellees*,

v.

RANDY KINDER EXCAVATING, INCORPORATED, doing business as
RKE CONTRACTORS; POSILLICO CIVIL, INCORPORATED,
COASTAL ENVIRONMENTAL GROUP, INCORPORATED; TEXAS
STERLING CONSTRUCTION COMPANY; SIERRA CLUB;
SOUTHERN BORDER COMMUNITIES COALITION,

*Movants-Appellants*.

———————————

STATE OF MISSOURI; STATE OF TEXAS,

*Plaintiffs-Appellees*,

v.

JOSEPH R. BIDEN, JR., in his official capacity as President of the United
States of America; UNITED STATES DEPARTMENT OF HOMELAND
SECURITY; ALEJANDRO MAYORKAS, in his official capacity as
Secretary of the United States Department of Homeland Security; UNITED
STATES OF AMERICA; TROY A. MILLER, in his official capacity as
Acting Commissioner of the United States Customs and Border Protection;
UNITED STATES CUSTOMS AND BORDER PROTECTION,

*Defendants-Appellees,*

v.

RANDY KINDER EXCAVATING, INCORPORATED, doing business as
RKE CONTRACTORS; POSILLICO CIVIL, INCORPORATED,
COASTAL ENVIRONMENTAL GROUP, INCORPORATED; TEXAS
STERLING CONSTRUCTION COMPANY; SIERRA CLUB;
SOUTHERN BORDER COMMUNITIES COALITION,

*Movants-Appellants.*

———————————

On Appeal from the United States District Court
for the Southern District of Texas

———————————

**BRIEF FOR FEDERAL DEFENDANTS-APPELLEES**

———————————

BRIAN M. BOYNTON
   *Principal Deputy Assistant*
   *Attorney General*

ALAMDAR HAMDANI
   *United States Attorney*

MICHAEL S. RAAB
JOSHUA DOS SANTOS
CAROLINE W. TAN
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7236*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

# CERTIFICATE OF INTERESTED PERSONS

*General Land Office v. Kinder*, No. 24-40447

A certificate of interested persons is not required, as defendants-appellees are all governmental parties. 5th Cir. R. 28.2.1.

*s/ Joshua Dos Santos*

Joshua Dos Santos
Counsel for Defendants-Appellees

## STATEMENT REGARDING ORAL ARGUMENT

The government does not believe that oral argument is necessary in these appeals regarding the district court's denial of intervention, but the government stands ready to present argument should the Court find argument warranted.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................. 1

STATEMENT OF JURISDICTION ................................................. 3

STATEMENT OF THE ISSUES ..................................................... 3

STATEMENT OF THE CASE .......................................................... 4

    A.    Congress enacts border barrier system appropriations and DHS announces priorities. ............................................................4

    B.    Plaintiffs challenge DHS priorities in 2021 and this Court remands for consideration of plaintiffs' preliminary injunction motion in July 2023. ...........................................6

    C.    After nine months of additional proceedings, the district court issues a preliminary injunction and the parties agree to seek final judgment. ...........................................................7

    D.    Proposed intervenors file motions to intervene shortly before judgment. .....................................................................9

    E.    The district court denies intervention and enters final judgment. ...................................................................................13

SUMMARY OF ARGUMENT ..........................................................16

STANDARD OF REVIEW ................................................................18

ARGUMENT ......................................................................................18

I.    The district court did not abuse its discretion or otherwise err in denying intervention as of right. ................................................18

    A.    The district court did not abuse its discretion in concluding that the intervention motions were not timely. .............................19

B.    Proposed intervenors did not show that their asserted interests would be practically impaired absent intervention. ......................................................................34

II.    The district court did not abuse its discretion in denying permissive intervention. .............................................................38

CONCLUSION.....................................................................................41

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                **Page(s)**

*Adam Joseph Res. v. CNA Metals Ltd.,*
  919 F.3d 856 (5th Cir. 2019) ............................................................ 20

*CTS Corp. v. EPA,*
  759 F.3d 52 (D.C. Cir. 2014) ............................................................ 28

*Deus v. Allstate Ins. Co.,*
  15 F.3d 506 (5th Cir. 1994) ............................................................. 34

*Federal Election Comm'n v. NRA Political Victory Fund,*
  513 U.S. 88 (1994) ....................................................................... 40

*General Land Office v. Biden:*
  71 F.4th 264 (5th Cir. 2023) ............................................................ 6
  No. 22-40110, 2022 WL 3010699 (5th Cir. July 29, 2022) ............................... 6

*Grainger v. Ottawa County,*
  90 F.4th 507 (6th Cir. 2024) ........................................................... 34

*Haspel & Davis Milling & Planting Co. v. Board of Levee*
  *Comm'rs of the Orleans Levee Dist.,*
  493 F.3d 570 (5th Cir. 2007) ........................................................... 18

*Illinois v. City of Chicago,*
  912 F.3d 979 (7th Cir. 2019) ........................................................... 26

*International Union, United Auto., Aerospace & Agric.*
  *Implement Workers of Am. AFL-CIO v. Scofield, Local 283,*
  382 U.S. 205 (1965) ..................................................................... 16

*Lease Oil Antitrust Litig., In re,*
  570 F.3d 244 (5th Cir. 2009) ........................................................... 13

*Maine Cmty. Health Options v. United States,*
  590 U.S. 296 (2020) ................................................................... 4-5

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,*
  732 F.2d 452 (5th Cir. 1984) .................................................. 38, 39, 40

*Rotstain v. Mendez,*
  986 F.3d 931 (5th Cir. 2021) ............................................................... 18

*Salazar v. Ramah Navajo Chapter,*
  567 U.S. 182 (2012) ........................................................................... 36

*Saldano v. Roach,*
  363 F.3d 545 (5th Cir. 2004) ............................................................... 40

*Save Our Springs All. Inc. v. Babbitt,*
  115 F.3d 346 (5th Cir. 1997) ............................................................... 27

*Sierra Club v. Espy,*
  18 F.3d 1202 (5th Cir. 1994) ............................................................... 31

*Sommers v. Bank of Am., N.A.,*
  835 F.3d 509 (5th Cir. 2016) ............................................. 3, 26, 27, 30

*St. Bernard Par. v. Lafarge N. Am., Inc.,*
  914 F.3d 969 (5th Cir. 2019) ................................................. 24, 26, 27

*Staley v. Harris Cnty.,*
  160 F. App'x 410 (5th Cir. 2005) ........................................................ 28

*Stallworth v. Monsanto Co.,*
  558 F.2d 257 (5th Cir. 1977) ......................................................... 19, 31

*Texas Health Choice, L.C. v. Office of Pers. Mgmt.,*
  400 F.3d 895 (Fed. Cir. 2005) ............................................................ 35

*Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.,*
  332 F.3d 815 (5th Cir. 2003) ............................................................... 38

*Turner v. Cincinnati Ins. Co.,*
  9 F.4th 300 (5th Cir. 2021) ............................................................ 18, 38

*United States v. Associated Milk Producers, Inc.,*
  534 F.2d 113 (8th Cir. 1976) ............................................................... 39

*United States v. Covington Cnty. Sch. Dist.,*
  499 F.3d 464 (5th Cir. 2007) ............................................................... 30

*United States v. LULAC,*
  793 F.2d 636 (5th Cir. 1986) ............................................................... 34

**Statutes:**

Administrative Procedure Act:
    5 U.S.C. §§ 701-706 ............................................................... 3
    5 U.S.C. § 706 .................................................................. 28

Contract Disputes Act of 1978,
    41 U.S.C. § 7101 *et seq.* .......................................................35
        41 U.S.C. § 7103(a) .......................................................... 35
        41 U.S.C. § 7104 ............................................................. 35
        41 U.S.C. § 7105 ............................................................. 35
        41 U.S.C. § 7107(a)(1) ....................................................... 35
        41 U.S.C. § 7108(a) ..................................................... 36, 38
        41 U.S.C. § 7108(b) .......................................................... 36

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,
    Pub. L. No. 104-208, div. C, tit. I, subtitle A, § 102(a),
    110 Stat. 3009, 3009-554 (1996) ..................................................4

Pub. L. No. 116-93, div. D, tit. II, § 209(a)(1),
    133 Stat. 2317, 2506, 2511 (2019) ................................................4

Pub. L. No. 116-260, div. F, tit. II, § 210,
    134 Stat. 1182, 1452, 1456-57 (2020) .............................................4

5 U.S.C. § 3106 ................................................................... 39

8 U.S.C. § 1491(a)(1) ............................................................ 35

28 U.S.C. § 516 .................................................................. 39

28 U.S.C. § 519 .................................................................. 39

28 U.S.C. § 1291 .................................................................. 3

28 U.S.C. § 1295(a)(3) ........................................................... 35

28 U.S.C. § 1331 .................................................................. 3

28 U.S.C. § 1361 .................................................................. 3

28 U.S.C. § 1651 .................................................................. 3

28 U.S.C. § 2201 ................................................................ 3

31 U.S.C. § 1304(a) ........................................................... 38

31 U.S.C. § 1304(a)(1) ...................................................... 36

31 U.S.C. § 1502(a) ............................................................ 5

31 U.S.C. § 1552 ................................................................. 5

31 U.S.C. § 1553 ................................................................. 5

**Regulatory Materials:**

28 C.F.R. § 0.20(b) ........................................................... 39

Proclamation No. 10,142,
    86 Fed. Reg. 7225 (Jan. 27, 2021) ................................... 5

**Rules:**

Fed. R. Civ. P. 24(a) ................................................. 13, 15, 18, 19

Fed. R. Civ. P. 24(a)(2) ................................................... 17, 34

Fed. R. Civ. P. 24(b)(1) ........................................................ 38

Fed. R. Civ. P. 24(b)(3) ........................................................ 38

Fed. R. Civ. P. 60 ................................................................ 37

**Other Authority:**

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice
    and Procedure* (3d ed.), Westlaw (database updated June 2024):
        § 1913 .......................................................................... 39
        § 1923 ...................................................................... 16-17

# INTRODUCTION

The Court should affirm the district court's denial of intervention motions in which proposed intervenors sought to raise new arguments on the eve of final judgment. This case began in 2021 and challenged the federal government's use of certain appropriations for construction of barrier system at the southern border. Those appropriations were set to expire for obligation in September 2024 and 2025. After three years of litigation, nine months of preliminary injunction proceedings, and a month of proceedings to clarify the preliminary injunction, the parties agreed to seek final judgment with only months left before expiration of the obligation period for one of the appropriations. Proposed intervenors are contractors and organizations with asserted interests in certain barrier system construction or remediation projects funded or processed with the appropriations at issue. Proposed intervenors moved to intervene shortly before judgment to raise new arguments for exempting the particular projects that are relevant to them from the district court's injunction.

The district court did not abuse its discretion in denying the intervention motions as untimely. Given the well-publicized nature of the case and years of briefing making the stakes clear, proposed intervenors

should have known far earlier that plaintiffs' requested injunction could impact their asserted interests and that the government was not making their project-specific arguments.  Such late intervention to raise new arguments also would prejudice the parties by setting back resolution of this time-sensitive case and would improperly encourage late intervention by entities with downstream interests in use of federal funds.  The district court properly concluded that late intervention was not warranted under those circumstances, particularly since proposed intervenors have other avenues in which to protect their asserted interests.

The district court also correctly concluded that proposed intervenors failed to establish that their asserted interests would be practically impaired if they were not allowed to intervene, as required for intervention of right under Rule 24(a)(2).  The contractors' interest is payment of costs, which they can obtain by filing breach-of-contract claims under the Contract Disputes Act.  Similarly, the organizations have not shown any breach of their settlement agreement, but in any event can protect their asserted interest in enforcing the agreement by invoking the dispute provisions of that agreement in separate litigation.

2

The district court did not abuse its discretion in denying intervention as of right under those circumstances. And the court's findings readily support the court's denial of permissive intervention, which is wholly discretionary.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the jurisdiction of the district court under 28 U.S.C. §§ 1331, 1361, 1651, and 2201, as well as 5 U.S.C. §§ 701-706. ROA.640. The district court entered final judgment and denied proposed intervenors' motions to intervene on May 29, 2024. *See* ROA.3396-98, 3406-09. Proposed intervenors timely filed notices of appeal on June 28, 2024. *See* ROA.3410-12, 3423-26, 3437-39, 3440-42. This Court has jurisdiction under 28 U.S.C. § 1291. *See Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512 (5th Cir. 2016).

## STATEMENT OF THE ISSUES

1.     Whether the district court abused its discretion in concluding that the motions to intervene were untimely.

2.     Whether the district court erred in concluding that proposed intervenors had not shown that their ability to protect their asserted interests would be impaired without intervention.

3

**3.**    Whether the district court abused its discretion in denying permissive intervention.

## STATEMENT OF THE CASE

**A.    Congress enacts border barrier system appropriations and DHS announces priorities.**

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 authorizes the Secretary of Homeland Security to construct physical barriers and accompanying infrastructure at the United States border.  *See* Pub. L. No. 104-208, div. C, tit. I, subtitle A, § 102(a), 110 Stat. 3009, 3009-554 (1996).

For fiscal years 2020 and 2021, Congress appropriated $1.375 billion each year to the Department of Homeland Security (DHS) "for the construction of barrier system along the southwest border" and gave the agency five years to obligate the funds.  Pub. L. No. 116-93, div. D, tit. II, § 209(a)(1), 133 Stat. 2317, 2506, 2511 (2019); Pub. L. No. 116-260, div. F, tit. II, § 210, 134 Stat. 1182, 1452, 1456-57 (2020) (providing "an amount equal to the amount made available in" the prior year).  An obligation is a commitment "that creates a legal liability of the government for the payment of goods and services ordered or received"—generally by entering into a contract.  *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 307

4

(2020) (internal quotation marks omitted).  Accordingly, the window for contracting these 2020 and 2021 appropriations would expire on September 30, 2024, and September 30, 2025, respectively.  *See* 31 U.S.C. §§ 1502(a), 1552 (providing that appropriations may not be used after expiration).  Once obligated, DHS would have five years to liquidate (*i.e.*, expend) the funds under contract.  *See id.* §§ 1552, 1553.

In 2021, after lengthy legal challenges to the federal government's use of other sources of funding for barrier system construction, President Biden issued a proclamation that ordered a pause in barrier system work to the extent permitted by law and required the relevant agencies to reevaluate their use of barrier system funding.  *See* Proclamation No. 10,142, 86 Fed. Reg. 7225 (Jan. 27, 2021).  As relevant here, DHS subsequently announced priorities for use of the 2020 and 2021 barrier system appropriations.  Those priorities focused on the safety, efficacy, and structural integrity of the barrier system: specifically, remediation of existing barrier to protect against risks of erosion or collapse; environmental mitigation and remediation; and installation of attributes (including lighting, roads, cameras, and detection technology) to make the barriers more effective and protect them from damage.  ROA.1377-90.

**B.     Plaintiffs challenge DHS priorities in 2021 and this Court remands for consideration of plaintiffs' preliminary injunction motion in July 2023.**

The Texas General Land Office and the States of Texas and Missouri brought these consolidated suits in 2021, challenging, as relevant here, DHS's use of the 2020 and 2021 barrier system appropriations.  ROA.43-83, 3817-52.  The States (later joined by the General Land Office) moved for a preliminary injunction based on their argument that the barrier system appropriations could be used only for construction of new barrier and that DHS's priorities were not consistent with that purpose.  ROA.3964-4020.  Three years of litigation ensued, including two appeals to this Court.  *See General Land Office v. Biden*, No. 22-40110, 2022 WL 3010699 (5th Cir. July 29, 2022) (per curiam); *General Land Office v. Biden*, 71 F.4th 264, 268 (5th Cir. 2023).  The district court initially dismissed some of the plaintiffs' claims on claims-splitting and standing grounds, and those plaintiffs appealed to this Court.  *General Land Office*, 71 F.4th at 268.

In July 2023, this Court reversed the district court's dismissal and remanded for consideration of the plaintiffs' motion for a preliminary injunction "expeditiously."  *See General Land Office*, 71 F.4th at 268.  On

6

remand, the case was reassigned, and the proceedings continued for nine months, including multiple rounds of additional briefing and hearings.

**C.    After nine months of additional proceedings, the district court issues a preliminary injunction and the parties agree to seek final judgment.**

On March 8, 2024, the district court entered a preliminary injunction barring the federal government from using the appropriations in the manner that plaintiffs challenged.  ROA.2489.  Specifically, the district court enjoined the federal government from using the relevant funds "toward mitigation and remediation efforts, repair of existing barrier, so-called system attribute installation at existing sites, or other similar purposes," and stated that the relevant appropriations provision "permits only the construction of physical barriers, such as additional walls, fencing, buoys, etc."  ROA.2542.  At that point, the fiscal year 2020 appropriation was set to expire in approximately six months, with the 2021 appropriation expiring one year after that. Consistent with that urgency, the district court stayed its own order for seven days to allow the government "to seek relief at the appellate level." ROA.2542.

The government did not appeal, but approximately one week later, on March 14, 2024, the government asked the district court for a one-week stay

"to enable Defendants to assess the necessary actions that must be undertaken to comply with the Court's order and to take appropriate steps to implement those actions to align" "with the requirements of the Court's order." ROA.2550. The government stated that it would, "if appropriate, present the Court with a motion for clarification and/or reconsideration before the injunction takes effect." ROA.2552-53.

Approximately one week after that, on March 22, 2024, the government moved for clarification as to "the scope of the preliminary injunction as to five categories of costs." ROA.2567. The government explained that it was "working expeditiously to comply with the Court's order by taking appropriate steps to cease using the challenged funds for projects barred by the Court's order." ROA.2567. The district court held a hearing on March 28 and rendered its decision from the bench. ROA.3751-88. As relevant here, the district court ruled that its injunction prohibited use of funding for replacement of existing barrier and allowed only construction of new barrier. ROA.3776-77. At the hearing, the district court emphasized "the tight timeframe" because of "the expiration of funds" and the need to move to judgment "as quickly as possible." ROA.3782.

8

The parties conferred and agreed not to appeal the preliminary injunction and to seek final judgment and a permanent injunction.  On April 5, 2024, plaintiffs filed an unopposed motion in this Court stating that "neither party intends to appeal the order in this preliminary posture" and that "[t]he parties have instead agreed to pursue final judgment in the district court."  *See* Unopposed Motion to Lift Abeyance and Return the Mandate to the District Court at 2, *Missouri v. Biden*, No. 22-40526 (5th Cir.), Dkt. 95.  Shortly thereafter, on April 10, the parties moved in district court for entry of final judgment and a permanent injunction, subject to limited briefing on a remaining remedy issue.  ROA.2829.

### D.  Proposed intervenors file motions to intervene shortly before judgment.

**1.**    After the parties had agreed to seek final judgment, several border barrier contractors (Southern Border Constructions and RKE Contractors) filed motions to intervene on April 8 and 9, 2024, respectively, followed by another contractor (Texas Sterling Construction Company) about one week later on April 15.  ROA.2672-92, 2752-74, 2901-11.  The contractors generally alleged that the federal government had taken actions that required payment to the contractors, but the government had informed them either that it could not process the claims or that it could not pay for

9

certain work because the preliminary injunction would not allow the
government to use the barrier system appropriations for those purposes.

In particular, Southern Border Constructions and RKE Contractors
had 2019 contracts for barrier construction work that the government had
later terminated. These contracts were not themselves funded by the
appropriations at issue in this litigation and payment under the contracts
themselves are not affected by the district court's injunction. But the federal
government had been using the barrier system appropriations at issue here
to administratively process the contractors' claims for termination costs. *See*
ROA.3180-81. After the district court's injunction, the government informed
the contractors that the government lacked funding for that administrative
processing. ROA.2681-82, 2825. The government stated it would inform the
contractors if "other funds" were identified to "allow continued work on these
matters." ROA.2825.

Similarly, Texas Sterling Construction Company had a 2022 contract
for replacement of legacy border fencing, which DHS had later modified by
"descoping" certain aspects of the contract. ROA.3181, 3115-17. That
contractor had entered into discussions with DHS regarding payment for
past work and the descoping decision. ROA.3181. The district court's

10

injunction, however, barred use of the barrier system appropriations on contracts for replacement of existing barrier. Accordingly, DHS instructed Texas Sterling to suspend all work and terminated the contract, explaining that the agency lacked funds to pay the contract. ROA.3044.

The contractors' intervention motions did not state that they were seeking to step into the government's shoes or that they were seeking to make the same arguments. Instead, the contractors sought to request carveouts for particular projects relevant to them and argued that the government had not been an adequate representative because it had not pressed those arguments. ROA.2689, 2771, 2911.

**2.** Eleven days after the first intervention motion, on April 19, 2024, Sierra Club and the Southern Border Communities Coalition (collectively, Sierra Club) also filed a motion to intervene. ROA.2930-40. Sierra Club asserted that the preliminary injunction interfered with enforcement of a settlement agreement that Sierra Club had entered into with the federal government nine months earlier, in July 2023. ROA.2934; *see also* ROA.3181-83 (explaining the procedural history of that litigation). Under the settlement agreement in that other litigation, the federal government agreed to engage in certain "environmental mitigation projects" "subject to the

11

availability of funds" under the specific barrier system appropriations at issue in this case. ROA.2985-86. After the district court issued the preliminary injunction in this case, the government informed Sierra Club that the appropriations were no longer available for environmental remediation work and therefore the government would cease that work. ROA.2934.

Sierra Club alleged that the government had breached the settlement agreement and sought to protect its interest in ensuring "compliance" with the contract. ROA.2934-35. Like the contractors, Sierra Club sought to make new arguments to carve out its remediation projects from the scope of the district court's injunction. ROA.2932. Sierra Club also argued that the government was not an adequate representative because the government had not pressed project-specific arguments to exempt settlement-agreement projects from the scope of the district court's injunction. ROA.2936, 2938.[1]

**3.**     The parties opposed the motions to intervene. ROA.3170-95, 3224-51. The federal government argued that proposed intervenors' attempt to raise new arguments was untimely and that proposed intervenors had

---

[1] A private landowner had also intervened in the district court but is not a party to this appeal. *See* ROA.2841-53.

other adequate means to protect their asserted interests.  ROA.3177.

Specifically, the contractors could seek remedies for breach of contract under

the Contract Disputes Act, which could be paid from other funding sources.

ROA.3187-88.  And Sierra Club could invoke the dispute provisions in its

settlement agreement for any alleged breach, including by seeking to re-

institute its claims against the federal government.  ROA.3188.

### E.    The district court denies intervention and enters final judgment.

The district court denied intervention as of right as untimely under the

four factors for timeliness.  *See* ROA.3401; Fed. R. Civ. P. 24(a); *In re Lease

Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009) (listing the factors).

The district court explained that the case was "broadly publicized" and

proposed intervenors "should have … filed" their motions to raise new

arguments "closer to the inception of this case when the motion to dismiss"

was "filed, briefed, and appealed," leading to this Court's remand in July

2023 for consideration of a preliminary injunction.  ROA.3402-03.  The

briefing throughout this time had "clearly identified the disputed issues in

this action," which should have alerted proposed intervenors of the need to

present their new arguments sooner.  ROA.3402-03.  The court also observed

that proposed intervenors' request "to clarify the scope of the Court's

preliminary injunction" with suggested carveouts came after the Court had already "had a hearing with the Parties to clarify that very issue." ROA.3397. But instead of moving to intervene with those new arguments earlier in this case regarding time-limited appropriations, proposed intervenors sought to join the case "right as the Parties ha[d] agreed, for the most part, on a permanent injunction." ROA.3397.

The district court further found "that the second, third, and fourth considerations weigh heavily in favor of finding that the motions to intervene are untimely." ROA.3401. As to the second consideration, the court found substantial "prejudice to existing parties from allowing late intervention" because proposed intervenors sought to "inject a wide range of new fact-specific interests about contract disputes … and environmental issues that have not previously been part of this litigation" and that would delay resolution of the case now that it had finally reached final judgment. ROA.3401-02 (quotation marks omitted). "As to the third consideration," the court found that "Putative Intervenors are not prejudiced by the Court denying their Motions." ROA.3402. The court emphasized that the contractors' interest does not relate to "the statutes in question" but rather

to "getting paid in general," and the contractors can seek payment for breach of contract under the Contract Disputes Act.  ROA.3402.

The district court also found that this case presented "unusual circumstances" warranting denial of the intervention motions.  ROA.3402. The court agreed with the government's argument that permitting intervention at this juncture would "encourage late-arriving parties to join litigation over federal agency actions near the conclusion of litigation after the merits of the case have been decided."  ROA.3402 (quotation marks omitted).  Opening this pathway would be particularly problematic for injunctions against federal officials, which often have "downstream impacts on a diverse collection of people and organizations."  ROA.3402 (alteration and quotation marks omitted).  The court thus held that such interests should be litigated in separate suits "rather than piling onto already complex cases of national consequence."  ROA.3402.

In addition to timeliness, the court held that proposed intervenors failed to satisfy the third condition for intervention as of right because they had not shown that the disposition of the case "may impair or impede" their ability to protect their interests.  ROA.3403; Fed. R. Civ. P. 24(a).  The court

explained that proposed intervenors "may seek relief in other jurisdictions and nothing in this case would prevent them from doing so." ROA.3403.

Finally, the district court denied permissive intervention "for the same reasons." ROA.3404. The court found that permissive intervention was untimely and "would unduly delay the adjudication of the rights of the original parties in this case." ROA.3404.

The court subsequently entered final judgment and a permanent injunction. ROA.3407-09. The contractors and Sierra Club appealed the denial of intervention.[2]

## SUMMARY OF ARGUMENT

The district court reasonably exercised its discretion in concluding that, under the circumstances of this time-sensitive case, proposed intervenors waited too long to assert their different arguments. The arguments in this case were clearly presented during three years of

---

[2] Proposed intervenors may appeal only the denial of intervention. No other portion of the final judgment is before the Court as proposed intervenors are not parties who may appeal the judgment, and proposed intervenors have not argued otherwise. *See International Union, United Auto., Aerospace & Agric. Implement Workers of Am. AFL-CIO v. Scofield, Local 283*, 382 U.S. 205, 209 (1965) (noting this rule); 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1923 (3d ed.), Westlaw (database updated June 2024) (same).

litigation, nine months of proceedings after this Court remanded the case, and a full month of proceedings after the district court issued the preliminary injunction. Proposed intervenors therefore long should have known that their interest could be affected by plaintiffs' requested injunction and that the government was not making their preferred arguments. Such late intervention would unduly prejudice the parties by setting back resolution of this case involving time-limited appropriations after the parties had already agreed to a final judgment. Moreover, proposed intervenors would not be prejudiced absent intervention because they had alternative fora in which to protect their interests. And unusual circumstances weigh against such late intervention in this case, which would encourage tardy intervention by entities with downstream interests in litigation challenging federal policies.

The district court also correctly denied intervention of right because plaintiffs failed to show that their interests would be practically impaired absent intervention, as required under Federal Rule of Civil Procedure 24(a)(2). As the district court explained, proposed intervenors can protect their asserted interests through other means: the contractors may seek payment for breach of contract under the Contract Disputes Act, and the organizations may protect their asserted interest in enforcement of their

settlement agreement by invoking the remedial provisions of their settlement agreement in the Northern District of California.

For the same reasons, the district court reasonably denied permissive intervention, particularly since "[p]ermissive intervention is 'wholly discretionary' and may be denied even when the requirements of Rule 24(b) are satisfied." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021).

## STANDARD OF REVIEW

This Court reviews a district court's denial of a motion to intervene de novo but reviews a determination of untimeliness for abuse of discretion. *See Rotstain v. Mendez*, 986 F.3d 931, 936 (5th Cir. 2021).

## ARGUMENT

### I.    The district court did not abuse its discretion or otherwise err in denying intervention as of right.

The Court should affirm the denial of intervention for the purpose of raising new arguments on the eve of judgment in this case involving time-limited appropriations. Proposed intervenors bear the burden to establish each element for intervention of right under Federal Rule of Civil Procedure 24(a), and "[f]ailure to satisfy any one requirement precludes intervention of right." *See Haspel & Davis Milling & Planting Co. v. Board of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007). As the

18

district court explained, the intervention motions fail to establish two of the requirements for intervention of right: timeliness and practical impairment of proposed intervenors' asserted interests absent intervention. *See* Fed. R. Civ. P. 24(a).

### A. The district court did not abuse its discretion in concluding that the intervention motions were not timely.

**1.** Timeliness is a case-by-case inquiry "determined from all the circumstances." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977) (quotation marks omitted). Because the timeliness inquiry is inherently contextual, so long as a district court makes a timeliness finding, that finding "is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Id.*

The unique circumstances of this case easily support the district court's discretionary finding that the motions to intervene were untimely under the four factors for assessing timeliness: (1) "the length of time during which the intervenor actually knew or reasonably should have known of his interest in the case"; (2) "the extent of prejudice to the existing parties to the litigation"; (3) "the extent of prejudice to the would-be intervenor"; and (4) any "unusual

circumstances" in the case. *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 865 (5th Cir. 2019).

This case began in 2021 when plaintiffs challenged DHS's obligation of fiscal year 2020 and 2021 appropriations for construction of barrier system at the southern border, arguing that DHS's use of those funds was inconsistent with the appropriations' language. From the beginning, the case faced time pressure because the period in which to obligate the funds would expire in September 2024 for the fiscal year 2020 funds and one year later for the fiscal year 2021 funds. After three years of litigation, two appeals to this Court, a remand for consideration of a preliminary injunction in July 2023, and nine months of proceedings after that remand, the district court issued a preliminary injunction in March 2024 based solely on the district court's interpretation of the appropriations. At that point, expiration of the obligation window for the fiscal year 2020 funds was months away, and further district court proceedings were unnecessary because of the district court's legal conclusion.

Throughout the next month, the government filed a motion to stay and motion to clarify the injunction for purposes of compliance. On March 28, 2024, the district court clarified the injunction and noted "the tight

timeframe" and the need to move "as quickly as possible" because of "the expiration of funds." ROA.3782. Then, after a fast-paced period of assessment and conferral, the parties agreed not to appeal the preliminary injunction and to seek final judgment and a permanent injunction based on the district court's legal conclusions. *See supra* pp. 7-9.

It was only then, on the eve of judgment, that proposed intervenors filed motions to intervene for the purpose of raising new arguments to carve out specific projects from the injunction. Proposed intervenors plainly had reason to know far earlier that plaintiffs' requested injunction could affect their interests. Indeed, the contractors all claim that they are owed money through processing or payment of contracts for construction of barrier system—the subject of the appropriations here. Similarly, the Sierra Club intervenors assert an interest in enforcing certain mitigation work under a settlement agreement that the government agreed to nine months earlier and that expressly tied that mitigation work to the availability of the specific appropriations at issue in this case. *See* ROA.2985-86 (stating that funding "shall come exclusively from DHS's fiscal year 2020 or 2021 barrier system appropriations as provided by the [DHS] Appropriations Act, 2020, and the

[DHS] Appropriations Act, 2021, subject to the availability of those funds."
(citations omitted)).

Given that context, the district court was well within its discretion in concluding that proposed intervenors' requests to intervene to raise new arguments came far too late. As the district court explained, the case was "broadly publicized" and three years of briefing had "clearly identified the disputed issues in this action." ROA.3402-03. As the district court had noted at the clarification hearing, this case "has been briefed to death"—"at the motion to dismiss stage," "on appeal," and "back down" on remand with both "initial briefs and supplemental briefs." ROA.3782. That briefing should have alerted plaintiffs both of the need to present their proposed carveouts sooner and of the fact that the government had not made their preferred project-specific arguments. Proposed intervenors thus had ample opportunity to participate earlier and "should have … filed" their motions to raise new arguments "closer to the inception of this case when the motion to dismiss" was "filed, briefed, and appealed," resulting in this Court's July 2023 remand for the district court to consider whether to grant a preliminary injunction. ROA.3402-03.

Indeed, proposed intervenors unreasonably delayed even after the district court granted the preliminary injunction. As the district court observed, the intervention motions' request "to clarify the scope of the Court's preliminary injunction" with suggested carveouts came after an entire month of additional proceedings following the preliminary injunction—well after the Court had already "had a hearing with the Parties to clarify that very issue." ROA.3397. But instead of moving to intervene with those new arguments as soon as possible in this case regarding time-limited appropriations, proposed intervenors sought to join the case "right as the Parties ha[d] agreed, for the most part, on a permanent injunction." ROA.3397.

The district court also properly found substantial "prejudice to existing parties from allowing late intervention" because proposed intervenors sought to raise new project-specific arguments for carveouts "that have not previously been part of this litigation"—all at the doorstep of final judgment. ROA.3401 (quotation marks omitted). Such late-coming and new arguments would set resolution of the case back further and undo the parties' concentrated efforts to resolve district court proceedings. The time to make such new arguments would have been during the many months in which the

parties were litigating the propriety and scope of the injunction after this Court's remand in July 2023—not a full month after the district court's decision and after the parties had already decided on next steps in light of the time pressure.

In addition, the court reasonably found that "Putative Intervenors are not prejudiced by the Court denying their Motions." ROA.3402. As explained in greater detail below, the proposed intervenors all have other avenues in which to seek relief. *See infra* pp. 34-38. The contractors' interest does not relate to "the statutes in question" but rather to "getting paid in general." ROA.3402. And the contractors can seek payment for breach under the Contract Disputes Act. ROA.3402. Similarly, the injunction in this case does not interfere with Sierra Club's ability to seek enforcement of its settlement agreement, and in any event the settlement agreement has express provisions for Sierra Club to seek remedies for any alleged breach. ROA.2994-97 (remedy provisions in agreement); *see also St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 975 (5th Cir. 2019) (third timeliness factor not satisfied where the putative intervenor could obtain relief via a separate action).

Finally, the court also reasonably concluded that "unusual circumstances" "weigh[ed] against permitting intervention."  ROA.3402.  The court agreed with the government that "permitting intervention here would encourage late-arriving parties to join litigation over federal agency actions near the conclusion of litigation," which is particularly concerning because "injunctions against federal officials charged with carrying out agency policies will likely have downstream impacts on a diverse collection of people and organizations."  ROA.3402 (alterations and quotation marks omitted).  As the court explained, such interests are best pressed in separate suits "rather than piling onto already complex cases of national consequence."  ROA.3402.  That is particularly so where, as here, proposed intervenors wait to raise new arguments until the merits of a time-sensitive case have essentially been decided, and the government needs to make fast-paced decisions about the next steps in the litigation.

2.    Proposed intervenors' arguments ignore the district court's discretion in assessing timeliness.  Their principal argument is that they could not know for certain that their interests were implicated either until the district court granted the preliminary injunction, the government alerted them that the injunction affected them, or the government decided not to

appeal the preliminary injunction. *See* Contractors' Br. 24, 28; Sierra Club

Br. 18-21. Proposed intervenors similarly argue that the case was merely at

a "preliminary … stage" because the court had only recently granted a

preliminary injunction. Contractors' Br. 40 (emphasis omitted).

Those arguments misapply the standard for timeliness. As this Court

has often repeated, "the relevant starting point is '"not when [the movant]

knew or should have known that his interests *would be* adversely affected

but, instead, when he knew that he had an interest in the case.'" *St. Bernard

Par.*, 914 F.3d at 974 (emphasis added) (quoting *Sommers v. Bank of Am.,

N.A.*, 835 F.3d 509, 513 (5th Cir. 2016)). Here, proposed intervenors should

have known that their asserted interests were at risk for the reasons

explained. *See Illinois v. City of Chicago*, 912 F.3d 979, 985 (7th Cir. 2019)

(explaining that courts evaluating timeliness "measure from when the

applicant has reason to know its interests might be adversely affected, not

from when it knows for certain that they will be" (emphasis omitted)).

Moreover, in contrast to their arguments on appeal, the proposed

intervenors' motions themselves argued that the government' failure to raise

project-specific arguments was sufficient reason to demonstrate that it was

an inadequate representative. ROA.2936-37 ("To the Sierra Club

Intervenors' knowledge, the United States has not sought a carve-out from the Court's preliminary injunction that would permit the government to comply with its pre-existing obligations under the Settlement Agreement."); ROA.2938 ("Indeed, the Defendants have not even attempted to represent the Sierra Club Intervenors' interests, for example, by requesting a carve-out from the preliminary injunction so that the government may comply with its pre-existing obligations in the Settlement Agreement."); *see also* ROA.2689, 2771, 2911.  And that fact had been true the entire time the case had been pending.  *See Save Our Springs All. Inc. v. Babbitt*, 115 F.3d 346, 348 (5th Cir. 1997) (finding intervention motion untimely because the facts purportedly showing a lack of adequate representation were "not recent developments").

Proposed intervenors could not just sit on their asserted interests and wait for a decision on the merits before deciding to bring new arguments about the injunctive relief that plaintiffs requested.  This Court has previously rejected similar arguments.  *See Sommers*, 835 F.3d at 513 (rejecting argument that the movant "could not have been aware that his interests would be adversely affected until the case was dismissed" (quotation marks omitted)); *St. Bernard Par.*, 914 F.3d at 974 (rejecting

27

argument that the movant did not know his interest would be adversely affected until "after receiving notice that his claim would not be paid"); *Staley v. Harris Cnty.*, 160 F. App'x 410, 413 (5th Cir. 2005) (unpublished) (affirming finding of untimeliness because the putative intervenor had "pointed to no arguable justification for its failure to intervene in a timely manner—i.e., there has been no change in the relief sought by the plaintiff; no alteration of the claims at issue; and no interests made to conflict by the final judgment").

Nor is proposed intervenors' inaction excused by the fact that the district court was considering a preliminary injunction. Proposed intervenors should have known that their interests could be affected by the broad preliminary injunction that plaintiffs requested. And because plaintiffs' arguments focused almost entirely on the legal question regarding interpretation of the appropriations, the prospect that the case would move from preliminary to permanent relief in short order should not have been surprising (nor are such streamlined proceedings uncommon in Administrative Procedure Act cases that are generally limited to the administrative record, *see* 5 U.S.C. § 706; *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014)).

28

Moreover, the intervention motions were untimely even if one started the clock at the time the district court granted the preliminary injunction. Proposed intervenors took a full month or more to file their motions—despite "the tight timeframe" in this case because of "the expiration of funds." ROA.3782. That was not a reasonable length of time to wait, particularly given the government's quick filing of motions stating that it was seeking to comply with the injunction and clear indications that the parties were conferring about how to end district court proceedings in this time-sensitive case. *See supra* pp. 7-9.

Proposed intervenors criticize the district court for failing to find exactly when proposed intervenors knew of their interests and when they should have intervened. *See* Contractors Br. 25; Sierra Club Br. 13. But proposed intervenors ignore the context in which the district court rendered its decision. In particular, Sierra Club admits that it knew of its interest in the case at least by July 2023—nine months before the preliminary injunction and ten months before it sought to intervene. Sierra Club Br. 6. Similarly, the contractors seeking payment or processing of barrier system construction contracts should have known that their work and payment could be impacted by litigation about the availability of the appropriations funding

29

for barrier system construction. And any interested person clearly should have known of the time pressure and the fact that the government was not making proposed intervenors' project-specific arguments. Under those circumstances, the district court was reasonable in finding that proposed intervenors had ample time and notice to raise their arguments at some point during the many months during which the case was briefed and pending, rather than on the eve of judgment. *See* ROA.3402-03; *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007) (per curiam) ("Appellants reasonably should have known of their interests in the case at least months before it actually filed its motion to intervene.").

Many of proposed intervenors' other arguments similarly misread the district court's decision or the record. For example, the district court clearly made numerous findings regarding untimeliness, so proposed intervenors are incorrect to suggest that the abuse-of-discretion standard does not apply. *See* Contractors' Br. 21 & n.4; Sierra Club Br. 17; *Sommers*, 835 F.3d at 513 (timeliness reviewed for abuse of discretion unless the "district court failed to make any findings regarding its timeliness conclusion" (quotation marks omitted)). Moreover, contrary to proposed intervenors' assertions, the district court clearly evaluated the prejudice to the parties resulting from

proposed intervenors' delay—not just prejudice of further proceedings generally.  ROA.3401 (evaluating "prejudice to existing parties from allowing *late* intervention" (emphasis added)).  And proposed intervenors are incorrect that their motions did not raise new issues.  Contractors' Br. 29; Sierra Club Br. 26.  The intervention motions expressly stated that they sought to make new arguments for carveouts from the injunction.  ROA.2689, 2771, 2911, 2932, 2938.  Proposed intervenors cannot fault the district court for relying on their own described intentions.

The cases on which proposed intervenors rely are thus inapposite.  *See, e.g.*, Contractors' Br. 24-25; Sierra Club Br. 19.  Those cases stand only for the proposition that timeliness is measured from the time when the movant has reason to know that its interests might be adversely affected.  *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (agreeing that movants neither "actually knew [n]or reasonably should have known of [their] interest in the case" before a letter explaining the effect of the case); *Stallworth*, 558 F.2d at 267 (stating that timeliness focuses not on when the movants "must have learned of the pendency of the action" but on "when they knew or should have known of their interest in the action").  The district

court's reasonable conclusions under the circumstances of this case are fully consistent with that rule.

Proposed intervenors likewise err in challenging the district court's conclusion that proposed intervenors would not be prejudiced absent intervention. Contrary to the contractors' arguments, their failure to intervene in this case will not burden or have any precedential effect on their ability to seek payment for breach of contract, as outlined more fully below. *See infra* pp. 34-38; Contractors' Br. 35-37. The contractors can seek payment for breach by seeking a judgment under the Contract Disputes Act that can be paid from the judgment fund; it is not true that they "must have access" to this case to get paid. Contractors' Br. 20. And the assertion that the contractors could have provided a useful perspective when the district court held a hearing to clarify its injunction only underscores how late the contractors' intervention motions were. Contractors' Br. 32-33.

Similarly, the Sierra Club incorrectly argues that it will be prejudiced because any relief from another court would be insufficient or could conflict with the district court's order. Sierra Club Br. 7, 15. But the interest that Sierra Club asserted in its motion was to "secur[e] … compliance" with its settlement agreement. ROA.2935. And Sierra Club does not deny that its

settlement agreement has specific provisions to follow in the event of a dispute—including by requesting reopening of its case. Moreover, as Sierra Club admits, its settlement agreement conditioned the government's provision of remedial work on the availability of funds, so Sierra Club's effort to enforce (or seek relief from) its agreement would not conflict with the injunction in this case. Nor is Sierra Club correct that the district court did not address its prejudice. Although the court did not specify further, it clearly found that "Putative Intervenors are not prejudiced by the Court denying their Motions," ROA.3402, as the government had argued, ROA.3185-88.

Finally, proposed intervenors argue that there were other special circumstances weighing in favor of timeliness or that the district court misjudged the way in which some of the facts cut. Sierra Club Br. 30-32; Contractors' Br. 33-34. Proposed intervenors' arguments are incorrect for the reasons stated, but more fundamentally, proposed intervenors cannot supplant the district court's discretionary weighing with their own. The district court was well within its discretion to conclude that the parties' agreement to reach final judgment after lengthy litigation in this time-pressured case was a factor weighing heavily against proposed intervenors'

attempt to inject new arguments at the eleventh hour—not a factor supporting it.

### B.    Proposed intervenors did not show that their asserted interests would be practically impaired absent intervention.

The district court's timeliness conclusion is sufficient to support its denial of intervention.  But the court also correctly concluded that proposed intervenors failed to establish Rule 24(a)(2)'s requirement that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."  Fed. R. Civ. P. 24(a)(2).  As the district court explained, proposed intervenors all have separate avenues in which to protect their asserted interests, and denial of intervention therefore does not prejudice them.  ROA.3403; *see Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525-26 (5th Cir. 1994) (holding that would-be intervenor had not shown practical impairment of his interest because "he can protect any interest he has" through other litigation); *United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986) (similar); *Grainger v. Ottawa County*, 90 F.4th 507, 516 (6th Cir. 2024) ("Other circuits have similarly found that intervention is not required when it would only prevent litigants from facing the inconvenience of filing their claims in other litigation.").

As to the contractors, Congress has created a comprehensive statutory scheme for resolution of contract claims against the federal government, including the ability to seek judicial relief in the Court of Federal Claims. The Contract Disputes Act of 1978, codified at 41 U.S.C. § 7101 *et seq.*, "exclusively governs Government contracts and Government contract disputes" and "provides the exclusive mechanism for dispute resolution." *Texas Health Choice, L.C. v. Office of Pers. Mgmt.*, 400 F.3d 895, 898-99 (Fed. Cir. 2005) (quotation marks omitted); 8 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded … upon any express or implied contract with the United States."). Under the Act, a contractor must submit its claim to the agency for a decision, after which the contractor may appeal to the appropriate board of contract appeals or "bring an action directly on the claim in the United States Court of Federal Claims." 41 U.S.C. §§ 7103(a), 7104; *see id.* § 7105 (establishing agency boards of contract appeals). A contractor may appeal the decision of either the Court of Federal Claims or the agency board to the U.S. Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(3); 41 U.S.C. § 7107(a)(1).

The contractors here allege nonpayment in breach of their contracts. Those are the kinds of costs for which they may seek compensation under the Contract Disputes Act. And any judgment that the contractors obtain would generally be paid out of the judgment fund and would not be paid from the funds enjoined in this case. *See, e.g.*, 31 U.S.C. § 1304(a)(1) (establishing the judgment fund "to pay final judgments, awards, compromise settlements, and interest and costs specified in the judgments or otherwise authorized by law when … payment is not otherwise provided for"); 41 U.S.C. § 7108(a), (b) (providing that judgments or awards under the Contract Disputes Act "shall be paid promptly" under the judgment fund provisions); *cf. Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 198 (2012) (explaining that the judgment fund was available to pay contract judgments when appropriations for the contract had been exhausted).

Similarly, the interest that Sierra Club asserted in its motion is enforcement of its settlement agreement in different litigation. ROA.2935 ("The Sierra Club Intervenors seek to protect their concrete interest in securing the federal government's compliance with the Sierra Club Settlement Agreement.") (emphasis omitted). The district court's injunction does not in any way affect Sierra Club's ability to "secur[e] the federal

government's compliance" with the agreement, ROA.2935, which expressly
ties mitigation obligations to the availability of funds, ROA.2985-86. But to
the extent Sierra Club alleges a breach of its settlement, it has an avenue for
relief before the court in the Northern District of California. The agreement
includes a detailed provision to resolve compliance disputes, including the
potential for Sierra Club to bring a motion under Federal Rule of Civil
Procedure 60 for relief from dismissal of its lawsuits. *See* ROA.2994-97.

As noted above, proposed intervenors' arguments to the contrary are
incorrect. In particular, the contractors' arguments rest on the assumption
that the injunction in this case will prevent its payment of its claims. *See*
Contractors' Br. 31 (arguing that "the Federal Government can always wave
the now-finalized injunction in the face of another decisionmaker to defend
its refusal not to negotiate and pay its contractors"). But they cite no
authority for that proposition. As the contractors acknowledge, termination
of contracts "are not uncommon" in government contracting, Contractors'
Br. 6, and the contractors can seek any costs legally due as a result of the
termination as part of the claim process and potential appeal under the
Contract Disputes Act, which can be paid from sources other than the

particular appropriations at issue here.  *See* 31 U.S.C. § 1304(a); 41 U.S.C.

§ 7108(a).

## II. The district court did not abuse its discretion in denying permissive intervention.

For the same reasons, the district court properly denied permissive

intervention.  Permissive intervention is "wholly discretionary."  *New*

*Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th

Cir. 1984) (quotation marks omitted).  This Court therefore reviews only "for

clear abuse of discretion" and reverses "only [in] extraordinary

circumstances."  *Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*,

332 F.3d 815, 822 (5th Cir. 2003) (quotation marks omitted).

Here, as the district court explained, the district court's timeliness and

prejudice analysis clearly support a denial of permissive intervention under

Rule 24(b), which requires a consideration of whether the request is "timely"

and states that "in exercising its discretion, the court must consider whether

the intervention will unduly delay or prejudice the adjudication of the

original parties' rights."  Fed. R. Civ. P. 24(b)(1), (3); ROA.3404.  Moreover,

because "[p]ermissive intervention is 'wholly discretionary,'" it "may be

denied even when the requirements of Rule 24(b) are satisfied."  *Turner v.*

*Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021); Wright & Miller, *supra*,

§ 1913 (similar).  Thus, even if the intervention motions could technically be timely, the court's concerns about timing and prejudice more broadly are more than sufficient to support its exercise of discretion.

Indeed, the district court's concerns take on special significance in a case implicating federal interests about the way DHS spends money appropriated to it by Congress.  As this Court has observed, when an intervenor obtains "full party rights," "the control of the original parties over their own lawsuit is significantly diminished." *New Orleans Pub. Serv., Inc.*, 732 F.2d at 473.  But in cases like this one, involving unique federal interests, "the Attorney General must retain considerable discretion in controlling government litigation and in determining what is in the public interest." *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 117 (8th Cir. 1976).

Congress has recognized that principle by entrusting the Department of Justice with the prerogative to control "litigation in which the United States, an agency, or officer thereof is a party."  28 U.S.C. § 516; *see also* 5 U.S.C. § 3106; 28 U.S.C. § 519; 28 C.F.R. § 0.20(b).  As the Supreme Court has observed, this represents a "policy choice" enabling the Department of Justice to make litigation decisions with a "broader view" based on "a

number of factors which do not lend themselves to easy categorization." *Federal Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 96 (1994).  That context reinforces the district court's sound denial of permissive intervention in this case.  *Cf. Saldano v. Roach*, 363 F.3d 545, 555 (5th Cir. 2004) (recognizing the Texas Attorney General's interest in maintaining control over the State's criminal cases and rejecting request for intervention by a Texas district attorney); *New Orleans Pub. Serv., Inc.*, 732 F.2d at 473 (denying intervention where addition of intervenor could prevent the original "parties from simply accepting a judgment of the district court by allowing it to become final without appeal").

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

ALAMDAR HAMDANI
  *United States Attorney*

MICHAEL S. RAAB
  *s/ Joshua Dos Santos*
JOSHUA DOS SANTOS
CAROLINE W. TAN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7236*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*
  *Joshua.Y.Dos.Santos@usdoj.gov*

November 2024

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

*s/ Joshua Dos Santos*
JOSHUA DOS SANTOS

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,878 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Expd BT 14-point font, a proportionally spaced typeface.

*s/ Joshua Dos Santos*
JOSHUA DOS SANTOS

**ADDENDUM**

# TABLE OF CONTENTS

Fed. R. Civ. P. 24 ....................................................................................A1

**Federal Rule of Civil Procedure 24**

**Rule 24. Intervention**

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) Permissive Intervention.

> (1) In General. On timely motion, the court may permit anyone to intervene who:

>> (A) is given a conditional right to intervene by a federal statute; or

>> (B) has a claim or defense that shares with the main action a common question of law or fact.

> (2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

>> (A) a statute or executive order administered by the officer or agency; or

>> (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

> (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.